*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONICA ANNE MANSFIELD, also known as
MONICA KAVANAGH,

UNPUBLISHED
August 22, 2019

        Plaintiff-Appellant,

v

No. 347408
Ionia Circuit Court
LC No. 2012-029016-DM

JASON DOUGLAS MANSFIELD,

        Defendant-Appellee,

and

MCM,

        Appellee.

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Monica Kavanagh, appeals the trial court's order denying defendant's, Jason Douglas Mansfield, motion to change custody and modifying defendant's parenting time with the parties' minor child, MCM. We affirm.

## I. BACKGROUND

The parties had two children during their marriage: AAM[1] and MCM. The judgment of divorce was entered in 2012, which awarded joint legal custody of the children to both parties and primary physical custody to plaintiff. Defendant served in the military, and, in 2013, he accepted employment in Virginia. However, defendant returned to Michigan in 2016, at which time he filed a motion for parenting time. The trial court provided defendant with parenting time

---

[1] AAM turned 18 during the lower court proceedings and is no longer within the jurisdiction of the trial court.

on alternating weekends from Saturday at 10:00 a.m. until Sunday at 6:00 p.m. during the school year. In the summer time, defendant had parenting time on alternating weekends from Fridays at 6:00 p.m. until Sundays at 6:00 p.m. and every Tuesday at 6:00 p.m. until Wednesday at 6:00 p.m. Both parties had two uninterrupted full weeks of parenting time each summer. The parties would have the children on alternating holidays. Subsequently, plaintiff moved closer to defendant, and the parties agreed to extend defendant's parenting time to Friday at 5:00 p.m. until Sunday at 7:00 p.m. during school, and Thursday at 6:00 p.m. until Sunday at 6:00 p.m. during the summer months.

In February 2018, defendant filed the motion to change custody that is at issue in this appeal. Defendant requested custody of the children, arguing that the children were not happy in plaintiff's home and that plaintiff was under a CPS investigation for physical abuse based on a CPS report that defendant filed against plaintiff. After holding a three-day custody hearing, the referee concluded that defendant had shown a change of circumstances to warrant a custody review. However, the referee determined that an established custodial environment existed with plaintiff, and defendant failed to show that changing custody was in MCM's best interest by clear and convincing evidence. Defendant requested a de novo review of the referee's findings, essentially arguing that the referee erred in its conclusion that a change of custody would not be in MCM's best interests. The trial court held the requested de novo review in January 2019.

The trial court agreed with the referee that a change of circumstances had occurred and that the established custodial environment was with plaintiff. The trial court analyzed the statutory "best interest" factors enumerated in MCL 722.23, finding that both parents were seriously concerning, and some factors favored plaintiff while others favored defendant. It concluded that its concerns with both parties precluded a finding that changing custody would be in MCM's best interests. The trial court then held an in camera interview with MCM before issuing its order regarding defendant's parenting time.

The trial court ordered that the parties would continue to share joint legal custody, with plaintiff retaining physical custody. During the school year, defendant would have parenting time with MCM on two consecutive weekends from Friday at 6:00 p.m. (or after school) until Sunday at 6:00 p.m. On the third weekend, defendant would have parenting time from Friday at 6:00 p.m. until Saturday at 4:00 p.m. MCM would spend the fourth weekend with plaintiff. In the summer, defendant would have parenting time during the week, while plaintiff would have alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Plaintiff would also have two weeks of uninterrupted parenting time. The parties would have MCM on alternating holidays. Further, the trial court ordered the parties to engage in family therapy to improve their ability to coparent. The trial court reserved its right to review the parties' compliance with the order. Finally, the trial court ordered that a second in camera interview would be held with MCM in May 2019. In late January 2019, this appeal followed.

On July 23, 2019, while this appeal was pending,[2] the trial court held a review hearing following its second in camera interview with MCM. The trial court also received a report from a professional counselor who had worked with the parties and children. The parties agreed to admit the counselor's report into evidence, although the trial court struck a confidential portion of the report.[3] The parties discussed MCM's school performance since the trial court's previous order, but other than generally agreeing that MCM continued to struggle in school, no consensus was reached whether her performance had improved or degraded. Her grades were apparently not admitted into evidence. The parties and the guardian ad litem (GAL) presented arguments. The trial court reiterated its previous findings that MCM had an established custodial environment with plaintiff, and a change in circumstances had occurred. The trial court then revisited its best interests findings, several of which it reaffirmed. However, it found several factors that had previously been neutral or slightly in favor of plaintiff to now favor defendant. It also found two factors that had each previously favored one of the parties to be closer to neutral.

The trial court noted that in January, it had been unable to find "in good conscience" that a change in custody was clearly and convincingly in MCM's best interests. However, it concluded that it now found that a change in custody was clearly and convincingly in MCM's best interests. The trial court praised both parties for engaging in good-faith efforts at coparenting therapy, but concluded that the coparenting was clearly proving unhealthy for both of them, so it should be discontinued.[4] The trial court entered an order that, in relevant part, maintained the parties' joint legal custody and ordered that defendant would have physical custody "effective immediately." However, the trial court also ordered that the existing summer parenting-time arrangement would first be finished as set forth in its January order. The trial court further ordered that MCM's participation in band camp for her new school would take priority over other scheduling conflicts. Its revised parenting-time schedule would go into effect August 19, 2019. Plaintiff promptly filed a motion to stay.

---

[2] This Court usually will not permit expansion of the record, and certainly parties have no right to expand the record. MCR 7.210(A)(1). However, we have the discretionary power to "permit amendments, corrections, or additions to the transcript or record" where justice so requires. MCR 7.216(A)(4). Plaintiff provided us with a transcript of the hearing along with her second motion to stay, and no party has disputed the accuracy or propriety of that transcript. Under the exceptional circumstances presented, we choose to treat plaintiff's motion to stay as implicitly also moving to expand the record, and we hereby grant the motion to expand the record.

[3] At oral argument, we requested that the parties provide us with a copy of the report, which we include in our expansion of the record.

[4] We therefore deem moot plaintiff's challenge to the trial court's order that the parties attend family therapy. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

## II. NATURE OF APPEAL

At the outset, this Court ordered the parties to address whether plaintiff's appeal is of right or by leave.[5] We conclude that plaintiff is an aggrieved party from the order of the trial court denying defendant's motion to change custody. See MCR 7.203(A)(1). Although the trial court *ostensibly* denied defendant's motion, the trial court significantly decreased plaintiff's parenting time, ordered plaintiff to participate in family therapy, scheduled a second in camera interview with MCM, and reserved the right to review the parties' compliance with the order. Moreover, plaintiff argues that the trial court erred in even considering defendant's motion. As a result, we agree that plaintiff arguably "suffered a concrete and particularized injury" from the trial court's actions, so she was aggrieved by the trial court's order. See *Manuel v Gill*, 481 Mich 637, 643-644; 753 NW2d 48 (2008). Consequently, this appeal is as of right.

## III. STANDARD OF REVIEW

This Court applies "three standards of review in custody cases." *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). "The great weight of the evidence standard applies to all findings of fact. A trial court's findings . . . should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id.* Further, the "abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id.* Finally, this Court reviews questions of law for clear legal error. *Id.* "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.*

Issues not presented to the trial court are unpreserved. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). This Court reviews unpreserved issues for plain error. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 427 (quotation marks and citation omitted).

## IV. EVENTS WHILE APPEAL WAS PENDING

We must initially address the propriety of the July hearing and other events in the trial court during the pendency of this appeal. Trial courts have the inherent power to revisit and reconsider their previous decisions at any time. See *Hill v City of Warren*, 276 Mich App 299, 306-307; 740 NW2d 706 (2007). The parties agreed to the admission of a redacted portion of the counselor's report, so plaintiff cannot now contend that it was error for the trial court to consider that report. *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Although the parties discussed MCM's school performance, it appears that the trial court declined to consider MCM's grades beyond the parties' general agreement that MCM continued to struggle in school. We do not believe the trial court erred as a consequence.

---

[5] *Mansfield v Mansfield*, unpublished order of the Court of Appeals, entered April 17, 2019 (Docket No. 347408).

Plaintiff contends that the trial court abused its discretion by ordering the second in camera interview with MCM. We disagree. The record supports the trial court's concerns with both parents and the effects upon MCM. It is clear from the transcript that the trial court wished to ensure that MCM's expressed preference at the first interview would remain consistent. In other words, the trial court allowed for the possibility that MCM might change her mind about wishing to reside with defendant, which could only work to the potential benefit of plaintiff. We do not understand how the trial court's decision harmed plaintiff, and in any event, the trial court's concern for MCM's interests is precisely the purpose of the child custody act. See *Frame v Nehls*, 452 Mich 171, 176; 550 NW2d 739 (1996). We find no error in the trial court's revisitation of its earlier factual findings. *Hill*, 276 Mich App at 306-307. We also find no error in the trial court's consideration of up-to-date evidence, including the redacted counselor's report and its second in camera interview with MCM. See *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994).

The trial court also purported to change its order regarding MCM's parenting time. Notwithstanding the general principle that trial courts may not modify orders that are pending on appeal, *Hill*, 276 Mich App at 307, several exceptions exist. The parties apparently agreed to the trial court's modification of its order regarding MCM's band camp attendance. An agreement by the parties is an exception to the general prohibition against altering an order pending on appeal. MCR 7.208(A)(2). In custody matters where proper cause or a change of circumstances has been shown, trial courts may be permitted to modify custody orders if doing so is in the child's best interests. *Safdar v Aziz*, 501 Mich 213, 217-219; 912 NW2d 511 (2018), citing MCR 7.208(A)(4). As we will discuss, the trial court had already properly found a change of circumstances, and its purported change to its order was based on MCM's best interests. Nevertheless, any changes the trial court made have not yet gone into effect or had any practical consequences. Therefore, even if the trial court erred by purporting to modify its order, any such error was harmless and is not grounds for reversal or vacation. *In re Portus*, 325 Mich App 374, 396; 926 NW2d 33 (2018).

## V. CHANGE OF CIRCUMSTANCES OR PROPER CAUSE

On appeal, plaintiff first argues that the trial court erred in holding a full custody hearing before determining whether defendant had established proper cause or a change of circumstances warranting review of the 2016 custody and parenting-time order. We disagree.

A trial court may modify a previous child custody judgment or order "for proper cause shown or because of change of circumstances." MCL 722.27(1)(c). Any such modification also requires "clear and convincing evidence that it is in the best interest of the child." *Id*. "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). A change of circumstances means "conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Id*. at 513-514 (emphasis in original). Either proper cause or a change of circumstances must be both significant and determined by reference to the statutory "best interest" factors enumerated in MCL 722.23. *Id*. at 511, 514. After proper cause or a change of circumstances has been demonstrated, "the trial court can then engage in a reevaluation of the statutory best interest

factors." *Id*. at 511. We agree with plaintiff that defendant's "Motion for Change in Custody" sought to change the children's established custodial environment to either exist with both parties or with him exclusively. As a result, defendant was required to establish proper cause or a change of circumstances pursuant to *Vodvarka*.

Plaintiff next argues that the trial court erred by referring the custody evaluation to the Friend of the Court for a hearing before a referee, rather than conducting the hearing itself. We find nothing to suggest that plaintiff addressed this concern to the trial court, so this issue is unpreserved. In any event, plaintiff misunderstands what occurred. The trial court must make its own findings regarding the threshold determination of proper cause or change of circumstances before referring a matter to the Friend of the Court to conduct an "investigation." MCL 552.505(1)(g); *Bowling v McCarrick*, 318 Mich App 568, 571-572; 899 NW2d 808 (2016). However, *Bowling* entailed a "conciliator's report," and no record was made of the proceedings that culminated in the report. *Id*. at 570-572. A hearing on the record before a referee is entirely different. Unlike "conciliators," referees are explicitly charged with fact-finding in domestic relations matters, MCL 552.507(1)-(2), all referee hearings must be recorded, MCR 3.215(D)(4), and any party is entitled to a de novo review by the trial court, MCR 3.215(E)(4), MCL 552.507(4). Trial courts are expressly authorized to delegate an initial fact-finding hearing to the referee, as long as they do not preclude the parties from presenting "live evidence at the judicial hearing." MCR 3.215(F)(2). The hearing held before the referee here is simply not just another name for an "investigation" under MCL 552.505(1)(g).

Furthermore, the trial court is not necessarily required to hold a separate hearing before revisiting a custody decision. Rather, "[t]he trial court is merely required to preliminarily determine whether proper cause or a change in circumstances exists before reviewing the statutory best-interest factors with an eye to possibly modifying the prior custody order." *Mitchell v Mitchell*, 296 Mich App 513, 518; 823 NW2d 153 (2012). The trial court properly delegated the initial hearing to the referee, and it properly held a review hearing. The referee noted that both parties had remarried, there were additional household members living with the children, the children had moved and changed schools, the children's relationship with plaintiff had diminished and their parental preference had changed, and AAM had moved out of plaintiff's home, which affected the time AAM spent with MCM. The combination of these factors constituted the change of circumstances. The trial court affirmed this finding and also added that defendant had recently returned to Michigan and became more active in the children's lives. Given the concerns regarding plaintiff's relationship with both of the children and the allegations of abuse, the referee's determination was not against the great weight of the evidence. See *Vodvarka*, 259 Mich App at 513-514 (stating that "there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child"). The combination of the changes "could have a significant effect on the child's well-being," which constitutes a sufficient "change of circumstance." *Id*. at 511-512.

Plaintiff seemingly contends that at the July hearing, the trial court improperly found *another* proper cause or change of circumstances without the jurisdiction to engage in any such analysis. If this is indeed plaintiff's contention, we disagree. It is obvious from the face of the transcript that the trial court merely referenced and reiterated its earlier finding. The trial court revisited its best interests findings only, not its earlier determinations that an established

custodial environment existed with plaintiff and that a change of circumstances had occurred. As discussed, those findings were not erroneous.

## VI. CONSIDERATION OF THE CHILD'S BEST INTERESTS

Because the trial court properly found a change of circumstances, the trial court properly addressed whether a change in custody was in MCM's best interests. As noted, MCL 722.23 enumerates several specific factors that the trial court must consider and evaluate in determining whether a change in custody is in the best interests of a child. The trial court properly addressed all of the factors, and it ultimately concluded that defendant failed to establish that changing MCM's custody was in MCM's best interests. At the July hearing, the trial court reviewed additional evidence from its second in camera interview with MCM and from a psychological report prepared by the counselor. The trial court then reconsidered some of its best interests findings, and it concluded that changing custody *was* in MCM's best interests. We will discuss those findings below.

First, however, we were extremely concerned by the trial court's order after its initial conclusion that changing custody had not been established to be in MCM's best interests. The trial court described its order as a mere change in parenting time. However, the label applied to an action is not dispositive. *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958). The bench and bar unfortunately lacks any real guidance from our Legislature or Supreme Court for determining when a permissible change in parenting time crosses the threshold into an impermissible change in custody in disguise. Nevertheless, we are persuaded that the threshold was crossed here. The effect of the trial court's order was to reduce plaintiff from MCM's primary caregiver to a weekend parent in the summer. The new arrangement would constitute a change in the established custodial environment. See MCL 722.27(1)(c). See also *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008). Because the trial court determined that the established custodial environment existed with plaintiff, it erred by changing that established custodial environment without finding clear and convincing evidence that the change was in the child's best interests.

However, we will not disturb a trial court's order unless failing to do so would be "inconsistent with substantial justice." MCR 2.613(A); MCR 3.902(A); MCL 769.26. An error that ultimately does "not affect the outcome of the proceeding" is harmless and cannot be a basis for reversal. *In re Portus*, 325 Mich App at 396. The trial court permissibly reconsidered its best interests findings and concluded that the evidence *does* clearly and convincingly establish that a change of custody was in MCM's best interests. The trial court mentioned changing its order, but insofar as we can determine, it did not implement any immediate change to the status quo to which the parties did not agree. Again, we look to substance rather than formalities or labels. The trial court was empowered to reconsider its factual determinations, and its reconsidered conclusion permitted the change of custody it had already effectuated. The trial court's unusual procedure makes our review more difficult, but it was ultimately harmless. Because, as we will discuss, it properly found the change of custody in MCM's best interests, its order effectively changing her custody was proper.

## VII. DE NOVO HEARING

Plaintiff also contends that the trial court erred in holding the de novo hearing because defendant did not specify the grounds in the referee's recommendation to which he objected. We disagree.

According to MCR 3.215(E)(4),

> A party may obtain a judicial hearing on any matter that has been the subject of a referee hearing and that resulted in a statement of findings and a recommended order by filing a written objection and notice of hearing within 21 days after the referee's recommendation for an order is served on the attorneys for the parties, or the parties if they are not represented by counsel. The objection must include a clear and concise statement of the specific findings or application of law to which an objection is made. Objections regarding the accuracy or completeness of the recommendation must state with specificity the inaccuracy or omission.

Defendant's objection to the referee recommendation merely requested a de novo review hearing. However, defendant explained that he did not object to any of the referee's factual findings. Instead, defendant argued that the referee erred in concluding that he failed to establish that a change of custody was in MCM's best interests. The trial court concluded that defendant would cure any procedural defects if he specified his objections in a brief filed before the de novo hearing. However, it does not appear that defendant ever filed any additional briefing.

Even if plaintiff is correct in asserting that defendant failed to specify the ground on which his objection was made, as required by MCR 3.215(E)(4), it is clear that plaintiff was aware of the nature of defendant's objection before the hearing. Plaintiff raised no objections at the hearing regarding this issue and defendant presented no new evidence, testimony, or argument at the de novo hearing. As a result, plaintiff could not have been surprised and has not shown that she suffered any prejudice from defendant's failure to provide specific grounds in his request for a de novo hearing. Therefore, we cannot find that any lack of specificity by defendant warrants disturbing the trial court's orders. See *Phillips*, 241 Mich App at 20.

## VIII. BEST INTERESTS FINDINGS

Plaintiff finally contends that the trial court's assessments of the best interests factors were erroneous. We find no error in the trial court's final, updated findings at the July hearing. According to MCL 722.23, the "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court found factors (a), (b), and (e) to favor both parties equally. The trial court found factors (c) and (h) to favor plaintiff. The trial court originally found factor (d) to favor plaintiff, but upon reconsideration found it to favor defendant. The trial court originally found factor (g) equal, but upon reconsideration found it to also favor defendant. The trial court found factors (f), (i), (j), (k), and implicitly (l) to favor defendant.

On appeal, plaintiff initially contended that factors (a) and (j) should favor her, and factors (f), (i), and (k) should be neutral. In light of the trial court's consideration and the procedurally difficult situation in which it places plaintiff, we presume she would also challenge the trial court's findings that factors (d), (g), and (l) favor defendant. In the interests of judicial economy and the obvious need to expedite this matter, we will treat those factors as properly challenged. Plaintiff does not challenge factors (b), (c), (e), or (h), so we will not address those factors. We conclude that the trial court's findings were properly supported by the evidence in the record.

Factor (a) addresses "The love, affection, and other emotional ties existing between the parties involved and the child." The trial court found the parties equal because, although it was clear that they both loved their children, both parties encountered difficulties expressing that love and maintaining a healthy relationship with the children. The evidence as to both parties was mixed. For example, there was testimony that MCM had a good relationship with plaintiff, but also that MCM was unhappy in plaintiff's home. The evidence supports the trial court's finding that plaintiff's refusal to acknowledge or address her own mental health problems and treatment of the children was unhealthy for the children. The evidence also supports the trial court's finding that defendant was also undermining the children's relationship with plaintiff. Ultimately, we do not find the trial court's finding that this factor favored neither party against the great weight of the evidence.

Factor (d) addresses "The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The trial court initially found this factor to slightly favor plaintiff. It reasoned that defendant had not been actively engaged with the children over a long term, and although it had "concerns" about plaintiff's home, it did not believe her home had been "horribly dysfunctional for the children." On reconsideration, the trial court went back through its notes and the evidence. It concluded that defendant appeared to have been providing an appropriate and stable environment, whereas the trial court concluded that it had previously given inadequate weight to domestic violence committed by plaintiff. It therefore concluded that factor (d) actually favored defendant. There was evidence in the record that plaintiff physically and emotionally abused the children, and there was evidence that AAM found defendant's home to be significantly more stable. We are not persuaded that the trial court's finding that factor (d) favored defendant was against the great weight of the evidence.

Factor (f) addresses "The moral fitness of the parties involved." The trial court found this favor to weigh against plaintiff because she had instructed AAM to lie to medical personnel about how he sustained an injury caused by plaintiff. The trial court credited plaintiff for refusing to lie about how many driving hours AAM had completed, but nonetheless found its instruction for AAM to lie a "huge concern." Plaintiff does not challenge whether the incident occurred, but argues that the trial court should not have given it much weight because it was an isolated incident from many years previously. We find no error in the trial court considering the incident, and we decline to substitute our judgment for that of the trial court regarding the amount of weight it should receive. We therefore are not persuaded that it was against the great weight of the evidence for the trial court to find that factor (f) favored defendant.

Factor (g) addresses "The mental and physical health of the parties involved." The trial court initially observed that defendant was physically disabled, whereas plaintiff was not. It also found that both parties had serious mental health concerns that they appeared unwilling to address despite being "pretty quick to identify issues for the other." The updated counselor's report considered in July strongly indicated that the earlier psychological evaluation had been flawed as to both parties. In particular, the counselor believed plaintiff's prior diagnosis with a personality disorder was probably wrong and she actually suffered from anxiety. However, the counselor also noted that some of plaintiff's personality inventory scores were concerning and inconsistent with her presentation. The counselor also noted that AAM had been "deeply hurt" by defendant's absence from his life, but both children described abusive conduct by plaintiff. In contrast, the counselor found defendant fairly healthy and stable; specifically noting that "[t]hese

findings do not support the accusations of spousal abuse made against him by his ex." We do not find it against the great weight of the evidence for the trial court to find, on reconsideration, this factor to favor defendant.

Factor (i) addresses "The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." Clearly, MCM is of sufficient age to express preference, and as discussed above, it is not seriously disputable that she initially preferred living with defendant and maintained that preference. The trial court emphasized that her preference was strong, reasonable, and rational. Plaintiff nevertheless contends that MCM's preference was not reasonable and that MCM did not comprehend the fact that changing custody would entail changing schools and various other aspects of her environment. We find plaintiff's contention contrary to the evidence, bordering on preposterous. The counselor confirmed that MCM "loves and cares about her mother" but clearly wanted to live with her father. The counselor also emphasized that MCM needed "more of a voice" and for the choice of where to reside to be "put in <u>her hands</u>" (emphasis in original). The trial court's finding that factor (i) favored defendant is not against the great weight of the evidence.

Factor (j) addresses "The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." It is not clear from the record what findings the trial court initially made regarding this factor, but its remarks on the record strongly suggested that it found both parties extremely disappointing. Plaintiff contends on appeal that the trial court placed too much emphasis on a single audio recording of what she understates as "a momentary emotional outburst and lapse of judgment." We disagree. On reconsideration, the trial court stated that it had previously found this factor to favor defendant. It expressed disappointment that defendant had not done more to encourage AAM to repair his relationship with plaintiff, but it found this factor to slightly favor defendant on the basis of the audio recording of plaintiff. We disagree with plaintiff's implicit suggestion that the trial court based its conclusion solely by taking the audio recording out of context, and she ignores the other evidence in the record tending to suggest that the recorded incident was not a unique departure from her normal conduct. We are therefore not persuaded that it was against the great weight of the evidence for the trial court to find that this factor slightly favored defendant.

Factor (k) addresses "Domestic violence, regardless of whether the violence was directed against or witnessed by the child." It is again unclear what the trial court's initial findings were regarding this factor. From its discussion about plaintiff's apparent ongoing conduct, and the evidence that defendant had only retaliated once, it appears to have implicitly found this factor to favor defendant. On reconsideration, the trial court emphasized more strongly that plaintiff was clearly aggressive and abusive to both defendant and the children, and it explicitly stated that it found this factor to favor defendant. Plaintiff argues that the trial court ignored evidence of domestic violence committed by defendant and the fact that both parties had long since moved on into stable and peaceful new relationships. The trial court did recognize that defendant was not solely a victim, but it emphasized that it relied heavily on "[plaintiff's] dynamic with the children has gone beyond just discipline, to what I would find abusive." It is clear that the trial court was more concerned on reconsideration by the domestic violence committed against the children by plaintiff. We do not find that it was against the great weight of the evidence for the trial court to find this factor in favor of defendant.

-11-

Finally, on reconsideration, the trial court also discussed issues under factor (*l*), which addresses "Any other factor considered by the court to be relevant to a particular child custody dispute." The trial court observed that MCM had mental health concerns, which is overwhelmingly supported by the psychological report. The trial court apparently intended that observation to be for the benefit of the parties rather than favoring either party. The trial court also commended both parties for getting assessments and having attempted to engage in coparenting, which implicitly favored both parents equally. Finally, the trial court noted that AAM was living with defendant, which weighed in favor of defendant because of the desirability of keeping AAM and MCM together. We find none of these findings against the great weight of the evidence.

Consequently, we disagree with plaintiff's contention that the trial court erred in any of its specific best interests findings or in its ultimate conclusion that a change in custody had been shown by clear and convincing evidence to be in MCM's best interests.

## IX. CONCLUSION

The trial court's January order effectively changed MCM's custody. Therefore, had the trial court not reconsidered its best interests findings, we would have been constrained to vacate its order and remand for further consideration. However, although unusual, the trial court's permissible reconsideration of its best interests findings in July rendered the change in custody proper. We find no other errors that resulted in any prejudice or other basis for disturbing the trial court's orders. Therefore, we affirm. Because of the unique posture of this appeal, we direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause